(Pleito No. 173.—Fallado en Febrero 20 de 1902.)

## Marimón contra Pelegrí.

Recurso contra sentencia dictada por la Corte de Distrito de Mayagüez.

1.—Interpretación de la Ley Foraker. Las palabras "y todas las personas legalmente casadas en Puerto Rico", de la Seccion 8 de la Ley Foraker, deben interpretarse como si dicha Sección dijera: "todas las personas en Puerto Rico, que han sido legalmente casadas, tendrán todos los derechos y privilegios, etc".

2.—Aplicación de la Constitución de los Estados Unidos. Cuando el Congreso de los Estados Unidos dió á Puerto Rico un sistema de leyes referentes al matrimonio y al divorcio, las cuales en muchos respectos estaban completamente en contradicción con las leyes vigentes en la época del Tratado, era claramente su intención que se asimilasen en principio y aplicación á las que existen en los Estados Unidos, y que fuesen cumplidas y ejecutadas de acuerdo con los principios establecidos en la jurisprudencia americana, y sometidas á su interpretación.

3.—Aplicación de las leyes de un país al efectuarse el cambio de soberanía. Al efectuarse el cambio de una soberanía por otra, ya sea por cesión, conquista ó de otro modo, las leyes del país conquistado ó cedido, quedan vigentes hasta que sean cambiadas por el país conquistador, ó al cual aquél fué cedido, siempre que no sean incompatibles ó estén en contradicción con la Constitución, instituciones ó las miras del Gobierno de la nueva soberanía; y siempre que cualesquiera leyes de un país extranjero sean sometidas á la consideración de los tribunales del país soberano á que pertenezca aquél, deberán interpretarse de acuerdo con las instituciones, espíritu y jurisprudencia de este último, independientemente de la interpretación de los tribunales del país extranjero.

4.—LEYES ABOLIDAS POR LA ORGÁNICA.   Aunque la Sección 8 de la Ley Orgá-
nica deroga sólo algunos artículos del Código Civil de Puerto Rico y algu-
nas secciones de la Orden General de 17 de Marzo de 1899, no obstante,
quedan tácitamente derogadas y abolidas todas las leyes y órdenes gene-
rales que se opongan á dicha Sección 8.

5.—DERECHOS DE LOS ESPAÑOLES EN LOS TRIBUNALES INSULARES.   Los espa-
ñoles residentes en Puerto Rico tienen los mismos derechos, privilegios y
beneficios en los tribunales insulares que los ciudadanos de la Isla.

6.—LA LEX FORI RIGE EN LOS CASOS DE DIVORCIO.   La lex fori es aplicable á
los casos de divorcio.   Los tribunales del Estado del domicilio de las
partes tienen jurisdicción para decretar el divorcio de acuerdo con sus
leyes, haciendo caso omiso del lugar en que se efectuó el matrimonio ó se
cometió el delito por el cual se concede el divorcio.

7.—DOMICILIO.   El domicilio de la mujer casada es aquél que tenga su marido.

### SENTENCIA.

En la Ciudad de San Juan Bautista de Puerto Rico, el día
veinte de Febrero de mil novecientos dos, en el pleito de
divorcio que ante Nos pende, entre María del Carmen de
Marimón de Pelegrí, como recurrente y Francisco Pelegrí y
Rotger, como recurrido; representada la primera en este Tri-
bunal por el Letrado Don Rafael López Landrón, y no
habiéndose mostrado parte el recurrido.—Resultando:   Que
el día tres de Octubre de mil novecientos, María del
Carmen de Marimón de Pelegrí, representada por su abogado
Don Luis Campillo, presentó en el Tribunal de Distrito de
Mayagüez, demanda contra su esposo Don Francisco Pelegrí
y Rotger, para obtener el divorcio "a vínculo matrimonii"
de su referido esposo, por adulterio del mismo.—Resultando:
Que debidamente citado, el recurrido compareció ante el
Tribunal, y dentro del término prescrito presentó su contes-
tación á la demanda en la que admitió sustancialmente los
hechos alegados en la misma, sin oponerse á dicha demanda,
y que el Tribunal después de los trámites legales, dictó
sentencia en cuyos resultandos se consignan, en resumen, como
probados los siguientes hechos:   Que el día trece de Agosto
de mil ochocientos setenta y dos la recurrente contrajo
legítimo matrimonio con el recurrido en la villa de la Bispal,
Obispado y Provincia de Gerona, en el Reino de España,
conforme á los ritos y ceremonias de la Iglesia Católica

Romana, y el día diez y nueve de Septiembre del mismo año, se celebró el matrimonio civil ante un Juez Municipal de la misma villa. Que en el año mil ochocientos setenta y nueve, con motivo de divergencias de caracteres de la recurrente y recurrido, surgieron dificultades entre ellos, abandonando el recurrido su hogar y domicilio, y viviendo separado de la recurrente, su esposa; y en el año mil ochocientos ochenta y dos, el recurrido se embarcó para Puerto Rico, estableciendo su domicilio en la ciudad de Mayagüez, en donde ha permanecido desde entonces, y donde se encuentra todavía ejerciendo su profesión de abogado y conservando su residencia y domicilio. Que en dicha ciudad durante muchos años, tuvo relaciones ilícitas con una concubina, que ya murió, y con la cual tuvo dos hijos, cuyos nombres son Mercedes y Francisca, que viven con él en su casa, y que él las está cuidando y educando como si fuesen sus legítimas hijas. Que del expresado matrimonio hubieron tres hijos, llamados Leocadia, Francisco y Carmen, todos los cuales ahora son mayores de edad y casados; y que durante su menor edad el recurrido también contribuyó á su manutención y educación. Que la recurrente es dueña de bienes que se encuentran en poder del recurrido, su esposo; y que las rentas de los mismos son suficientes para la manutención de la recurrente, pudiendo vivir con ellas cómodamente; y que, por su parte, abandona y renuncia á toda y á cualquiera pretensión, derecho, ó acción contra cualesquiera bienes que el recurrido poseyere, tan pronto como entregue y ponga á la disposición de ella los bienes que le pertenecen en virtud del divorcio que se conceda, de modo que pueda poseerlos por su propio derecho, y administrarlos libre é independientemente de su referido esposo.—Resultando: Que el Ministerio Fiscal del Tribunal de Distrito de Mayagüez, que en cumplimiento de las leyes vigentes como materia de orden público, está llamado á intervenir en juicios de esta naturaleza, expuso que no encontraba motivos legales para oponerse á la demanda, reservándose, sin embargo, el derecho de

hacerlo en el caso de que surgiese un motivo legal.—Resultando: Que también aparece en los autos que en el año de mil ochocientos ochenta y siete, la recurrente vino desde España á Mayagüez, en busca de reconciliación con su citado esposo; pero que sus esfuerzos en este respecto resultaron inútiles.—Resultando: Que el Tribunal de Distrito de Mayagüez, dictó sentencia con extensos fundamentos en veinte y dos de Noviembre de mil novecientos, declarando sin lugar la demanda de divorcio y condenando en las costas á la recurrente, contra cuya sentencia estábleció la recurrente recurso de casación ante este Tribunal, autorizado dicho recurso por el número 1 del artículo 1,689 de la Ley de Enjuiciamiento Civil ·y alegando como motivo las infracciones legales que literalmente copiadas dicen así:—1ª Violación de la regla general de Derecho Civil comprendida en el precepto 27 del Código y confirmado por la sentencia del Tribunal Supremo de España de 1º de Julio de mil ochocientos noventa y siete.—¿Por qué?—Porque idénticos los derechos civiles de naturales y extranjeros, como lo sancionan esos preceptos, se establece en el fallo la inadmisible desigualdad entre unos y otros en punto á los derechos civiles del divorcio.—2ª Aplicación indebida del inciso 2º del artículo 4º del Código Civil.—¿En qué concepto?—No es ni ha sido, ni podido ser el reconocimiento de los hechos fundamentales de la demanda por el demandado renuncia propiamente dicha contra ·el interés ó el orden público, ó en perjuicio de tercero, que hubiere de ser desechada por tanto.—Es el revés.—La razón legal del divorcio, en la actual legislación aquí vigente, está en que proteje la paz y la tranquilidad de las familias desgraciadas, la libertad individual de todo cónyuge inocente, los derechos de la filiación legítima, el buen orden doméstico, siendo á manera de un remedio legal, como indica el "Bill Foraker" destinado á corregir y enmendar en cuanto es posible para lo venidero, los yerros de los contratantes que se unen en matrimonio.—Es el

divorcio una ley de seguridad pública contra la sevicia doméstica, de orden evidentemente constitucional y constitutivo de la vida interior del país, que entre uno de sus principios fundamentales sanciona el citado Bill, y en este concepto obliga á todos los que habiten en este territorio, como determina el artículo 8º del Código, por tal virtud también infringido.—De suerte que aun cuando hubiese aquí sobreentendida alguna renuncia de parte del cónyuge ofensor, ella favoreciera positivamente, lejos de perjudicar, los intereses públicos del orden doméstico juntamente con los privados de los hijos inocentes.—3ª Interpretación equivocada y aplicación indebida y absoluta de la jurisprudencia que invoca el fallo, de trece de Enero y doce de Mayo de mil ochocientos ochenta y cinco y veinte y seis de Mayo de mil ochocientos ochenta y seis.—Fijan estas sentencias los alcances del estatuto personal ante el derecho privado internacional; pero no los extienden á extremos tales que no reconozcan excepción ó limitación en materia de divorcio tal y como se halla establecido actualmente en esta Isla, de condiciones sociales y políticas ya hoy tan distintas.—El divorcio civil, bajo la ley americana en Puerto Rico, no puede confundirse con el divorcio de la ley española, profundamente modificada en este respecto.—La *lex fori*, la ley del país en que el litigio se juzga, es la que debe decidir si procede ó no el divorcio; nunca, jamás, tocará á los jueces propios, en punto al orden constitucional de las familias, aplicar las leyes extranjeras derivadas de principios constitucionales opuestos.—Si el divorcio en España, como relativo, obedece á principios religiosos del Estado, ¿cómo considerarlo parte del estatuto puramente personal ó privado, ni cómo convertir nuestros poderes públicos judiciales, dentro de un orden político sin fe religiosa, en sancionadores de la opuesta doctrina constitucional?—Porque es de notar ante todo que según la jurisprudencia de los Estados Unidos, citada por el tratadista Laurent (y que debe prevalecer entre nosotros), á los jueces americanos compete

decretar el divorcio de cónyuges que, según su ley, no pueden divorciarse.—¿ Razón de ello?—Que las leyes americanas han descartado ya, como las de todos los países democráticos, el divorcio del estatuto personal, señalando su carácter predominante de ley pública y de interés político general.—4ª   Aplicación indebida del artículo 9º del Código Civil.—El divorcio introducido entre nosotros por la legislación americana, no es ya hoy una ley de índole puramente personal y privada, limitada al estado de las personas, sino comprendida en el interés general del precepto genérico 3º del mismo cuerpo de derecho.—5ª   Aplicación indebida de la disposición 24 de la Orden General de diez y siete de Marzo de mil ochocientos noventa y nueve, é infracción del "Bill Foraker," Sección 8ª, en consonancia con el Tratado de París; por cuanto evidentemente no se tienen por derogadas las anteriores leyes del país por las fundamentales preferentes de los Estados Unidos sobre divorcio, y se interpreta equivocadamente, de una manera restrictiva, limitada á los casados precisamente en Puerto Rico, la acción de divorcio sancionada en la citada Sección 8ª del Bill.— Resultando:   Que en el acto de la vista de este juicio ante el Tribunal Supremo, el Fiscal Auxiliar, que como se ha expresado antes, interviene en el asunto por contener materia de orden público, y de acuerdo con el ilustrado dictamen emitido por el Honorable Fiscal General de esta Isla, que se encuentra en el rollo de estos autos, tampoco se opuso á la petición consignada en el escrito de demanda, expresando su conformidad y que debía concederse el divorcio.—Visto: Siendo Ponente el Juez Asociado Don Louis Sulzbacher.— Considerando:   Que la resolución del Tribunal de Distrito está fundada en varios razonamientos y apreciaciones, de las que sólo aceptará este Tribunal aquéllas que estime pertinentes.—Considerando:   Que el referido Tribunal de Distrito fué de opinión de que, siendo las partes, en este proceso, ciudadanos de España, y habiéndose celebrado y solemnizado su matrimonio en dicho país, solamente las leyes de éste,

*referentes á divorcio*, les eran aplicables, ó sea : que los Tribunales de Puerto Rico, hoy, en asuntos de divorcio entre españoles, cuyo matrimonio se ha efectuado en España, deben aplicar las leyes de dicho país, llegando el Tribunal á estas conclusiones por su interpretación de la Sección 8ª de la Ley Orgánica de Puerto Rico, ó sea, el Acta del Congreso de los Estados Unidos, titulada, "Ley para proveer, temporalmente, de Rentas y un Gobierno Civil á la Isla de Puerto Rico, y para otros fines," aprobada en doce de Abril de mil novecientos, y conocida generalmente como la "Ley Foraker;" opinando el Tribunal, que el divorcio puede concederse solamente á personas cuyo matrimonio ha sido celebrado en Puerto Rico; y también por la aplicación de la Sección 24ª de la Orden General de diez y siete de Marzo de mil ochocientos noventa y nueve, promulgada por el Mayor General Guy V. Henry, que dispone "que los matrimonios contraídos por personas nacidas fuera de la Isla, deben regirse en asuntos civiles, por las leyes del país á que dichas personas pertenezcan," cuyas opiniones no estima bien fundadas este Tribunal Supremo.—Considerando : Que hay que admitir, en principio, que al efectuarse el cambio de una soberanía por otra, ya sea por cesión, conquista ó de otro modo, las leyes del país conquistado ó cedido, quedan vigentes hasta que sean cambiadas por el país conquistador, ó al cual aquél fué cedido; siempre que no sean incompatibles, ó estén en contradicción con la Constitución, instituciones, ó las miras del Gobierno de la nueva soberanía.—Considerando : Que también es un principio de ley internacional y *á fortiori* aplicable á un país conquistado ó cedido, el que siempre que cualesquiera leyes de un país extranjero, sean sometidas á la consideración de los Tribunales del país soberano á que pertenezca aquél, sean interpretadas de acuerdo con las instituciones, espíritu, y jurisprudencia de este último, independientemente de la interpretación de los Tribunales del país extranjero.—Considerando :   Que durante el Gobierno Militar se efectuaron en

Puerto Rico algunos cambios, modificaciones y adiciones
en las leyes vigentes en la época de la ocupación por el
Gobierno de los Estados Unidos, cuyos cambios, modifica-
ciones y adiciones son conocidos bajo el título de "Órdenes
Generales," y que se efectuaron otros cambios por el acta del
Congreso antes citada ("Ley Foraker") y están especialmente
contenidos en la Sección 8ª de la misma, que dice lo siguiente:
"Que las leyes y ordenanzas de Puerto Rico actualmente en
vigor, continuarán vigentes, excepto en los casos en que sean
alteradas, enmendadas ó modificadas por la presente; ó hayan
sido alteradas ó modificadas por órdenes militares ó decretos
vigentes, cuando esta ley entre á regir, y en todo aquéllo en
que las mismas no resulten incompatibles ó en conflicto con
las leyes estatutorias de los Estados Unidos no aplicables local-
mente, ó con las presentes disposiciones, hasta que sean alte-
radas, enmendadas ó revocadas por la autoridad legislativa
creada por la presente para Puerto Rico, ó por una ley del
Congreso de los Estados Unidos.—Disponiéndose: Que la
parte de la ley vigente cuando se efectuó la cesión en Abril
once de mil ochocientos noventa y nueve, prohibiendo el
matrimonio de los curas, ministros ó secuaces de cualquiera
religión con motivo de votos que hubiesen hecho ó tomado,
ó sea el párrafo 4º, artículo 83, capítulo 3º del Código Civil,
y que continuara en vigor por orden del Secretario de Justi-
cia de Puerto Rico, fechada en Marzo diez y siete de mil
ochocientos noventa y nueve, y promulgada por el Mayor
General Guy V. Henry, Voluntarios de los Estados Unidos,
queda revocada y anulada por la presente, y todas las perso-
nas legalmente casadas en Puerto Rico, tendrán todos los
derechos y recursos conferidos por la Ley á los contrayentes
de matrimonios civiles ó religiosos.—Disponiéndose, además:
Que el párrafo 1º, artículo 105, sección 4ª, sobre divorcio, en
el Código Civil; y el párrafo 2º, sección 19 de la Orden del
Secretario de Justicia de Puerto Rico, fechada Marzo diez y
siete de mil ochocientos noventa y nueve, y promulgada por
el Mayor General Guy V. Henry, Voluntarios de los Estados

Unidos, quedan por la presente redactados en los términos siguientes: "Adulterio por parte del marido ó de la mujer." —Considerando: Que por dicha sección se declaró que las leyes y ordenanzas vigentes en la fecha de la adopción de dicha acta, seguían vigentes en Puerto Rico, á excepción de las partes alteradas, enmendadas ó modificadas por dicha sección ó que habían sido alteradas ó modificadas por las citadas Ordenes Generales, no fuesen incompatibles, ó estuviesen en contradicción, con las leyes estatutorias de los Estados Unidos, que no sean localmente inaplicables, ni con las disposiciones de dicha Acta del Congreso.—Considerando: Que dicha sección también dispone que quedan derogadas todas las leyes que prohiban el matrimonio de sacerdotes y ministros de cualquiera religión, á causa de sus votos religiosos; y también que el adulterio, de parte del marido, fuese un motivo legal para el divorcio, y que todas las personas legalmente casadas en Puerto Rico, tendrán todos los derechos y privilegios concedidos por la ley á los contrayentes de matrimonios, ya sean civiles, ya religiosos.—Considerando: Que esta frase ha sido interpretada por el citado Tribunal de Distrito, como si expresase "y todas las personas que han sido legalmente casadas en Puerto Rico, tendrán todos los derechos y privilegios" etc.; sosteniendo el Tribunal que solamente las personas, cuyo matrimonio ha sido celebrado en la Isla de Puerto Rico, pueden obtener el divorcio en los Tribunales de la misma, y que si bien es cierto que las palabras "todas las personas legalmente casadas en Puerto Rico," dan lugar á duda, el Tribunal, al tener en cuenta la intención del Congreso, puede fácilmente llegar á una recta interpretación.—Considerando: Que es evidente, é insostenible otra opinión, que cuando el Congreso de los Estados Unidos dió á Puerto Rico un sistema de leyes referentes al matrimonio y al divorcio, cuyas leyes, en muchos respectos, estaban completamente en contradicción á las leyes vigentes en la época del Tratado, era claramente su intención que se asimilasen en principio y aplicación á

las que existen en los Estados Unidos, y que fuesen cumplidas y ejecutadas de acuerdo con los principios establecidos en la jurisprudencia americana, y sometidas á su interpretación.—Considerando: Que en la obra de Sutherland sobre la interpretación de Estatutos, se establecen los principios siguientes: "No debía prevalecer la interpretación más bien literal de una sección de un Estatuto, si tal interpretación está opuesta á la intención de la Legislatura, tal como se manifiesta por el Estatuto, y si las palabras permiten por su sentido alguna otra interpretación, debe adoptarse aquella que lleve á efecto dicha intención. "Un Estatuto podrá ser interpretado contra su sentido literal, si de la interpretación literal resultara un absurdo ó contradicción, y si las palabras fueren susceptibles de otra interpretación, que realizara en su manifiesta intención."—"Cuando el lenguage es abstracto ú obscuro, el Tribunal debe interpretarlo de modo que sea útil para el objeto de la Legislatura y para administrar justicia á las partes litigantes.—Considerando: Que estos principios de interpretación de leyes son perfectamente aplicables á la Ley Foraker, no obstante su carácter de ley fundamental de Puerto Rico, toda vez que en el presente caso se trata de determinar la verdadera intención del Congreso.—Considerando: Que, por esta razón, las palabras "y todas las personas legalmente casadas en Puerto Rico," deben interpretarse como si dicha cláusula dijera: "*todas las personas en Puerto Rico, que han sido legalmente casadas, tendrán todos los derechos y privilegios,*" etc., no importando el lugar en donde se celebrase el matrimonio, con tal que dicho matrimonio fuese legal en aquel país, y que en el presente caso, la interpretación del Tribunal de Distrito de Mayagüez constituiría una infracción del artículo XI del Tratado de Paz entre los Estados Unidos de América y el Reino de España que fué firmado el once de Abril de mil ochocientos noventa y nueve, cuyo artículo es como sigue: "Los españoles residentes en los territorios, cuya soberanía cede ó renuncia España por este Tratado, estarán sometidos en lo civil y en lo criminal á

los tribunales del país en que residan, con arreglo á las leyes comunes que regulen su competencia, pudiendo comparecer ante aquéllos, en la misma forma y empleando los mismos procedimientos que deban observar los ciudadanos del país á que pertenezca el Tribunal.—Considerando: Que, por lo tanto, era indudablemente la intención que los españoles residentes en Puerto Rico ó en cualquiera de los demás países cedidos por España á los Estados Unidos, habían de tener los mismos derechos, privilegios y beneficios en los respectivos Tribunales, que los ciudadanos del respectivo país; y, en su consecuencia, si un ciudadano de Puerto Rico tiene el derecho de establecer una demanda de divorcio en los Tribunales de jurisdicción competente, no podrá negarse ese mismo derecho á los españoles residentes en Puerto Rico.— Considerando: Que consta en autos que el recurrido ha tenido su domicilio y residencia en la ciudad de Mayagüez, en esta Isla, desde mil ochocientos ochenta y dos, que es principio de la legislación romana admitido por la jurisprudencia moderna, que de la misma manera que la mujer toma el rango de su esposo, así también toma ella el domicilio del mismo, lo cual ha sido la ley de España desde tiempo inmemorial, y se ha observado en Puerto Rico, en virtud del artículo 64 de la Ley de Enjuiciamiento Civil, cuyo artículo está aun vigente; que la misma teoría prevalece en la jurisprudencia americana, la que necesariamente debe consultarse en este asunto y que en el caso de *Atherton* contra *Atherton*, resuelto en quince de Abril de mil novecientos uno, por el Tribunal Supremo de los Estados Unidos, y cuyo caso se encuentra en el tomo 181, página 155, dicho Tribunal cita la siguiente doctrina establecida en la obra de Story "Sobre la contradicción de las leyes." (*Story on the Conflict of Laws*): "Los Tribunales del Estado del domicilio de las partes; indudablemente tienen jurisdicción para decretar el divorcio de acuerdo con las leyes de dicho Estado, por cualquiera causa, admitida por aquellas leyes, sin hacer caso del lugar en que se efectuó el matrimonio, ni de aquél en que se

cometió el delito con motivo del cual se concede el divorcio; y el divorcio concedido en esta forma, es válido en cualquiera parte."—Considerando: Que, la *lex fori* es la aplicable al caso, teniéndose presente que las formas de los recursos y la ejecución de sentencias deben regularse única y exclusivamente por las leyes del lugar en donde se ha entablado la demanda," cuyo principio está explícitamente sostenido por "Bouvier." Considerando: Que este pleito fué promovido con arreglo al procedimiento vigente en Puerto Rico, y el divorcio que se solicita debe ser concedido por las mismas leyes de Puerto Rico, *que en el presente caso son de especial legislación del Congreso, bajo la citada Ley Foraker.*—Considerando: Que el Tribunal del Distrito sostiene, que la citada sección 8ª de la Ley Foraker sólo deroga algunos artículos del Código Civil y también algunas secciones de la Orden General de diez y siete de Marzo de mil ochocientos noventa y nueve, por lo cual los demás artículos del mismo Código referentes á matrimonios y divorcios y las demás secciones de dicha Orden General han quedado vigentes, cuya presunción, aunque basada en un reconocido principio legal, no puede sostenerse en el presente caso, porque en el citado Código y Orden General se encuentran disposiciones de sentido y significación semejantes á las derogadas por la citada Acta del Congreso; y si aquellas disposiciones que aun están en el texto de la ley hubieran de permanecer vigentes, impedirían ó serían un obstáculo á lo que está permitido por efecto de las secciones derogadas, dejando existentes disposiciones contrarias á la manifiesta y verdadera intención del Congreso, por lo cual todas las leyes que estén en contradicción con la sección 8ª de la Ley Foraker están tácitamente, y, sin duda alguna, absolutamente derogadas y abolidas; sin que pueda alegarse que la sección 24 de la citada Orden General no se refiere solamente á matrimonios sino incluye también divorcio, porque, sea lo que fuere sobre tal referencia, este punto ha quedado completamente esclarecido.—Considerando: Que por las

opiniones de los autores anteriormente citadas y la decisión del Tribunal Supremo de los Estados Unidos, también citadas, debe declararse que el Tribunal de Distrito de Mayagüez ha incurrido en error, tanto en la interpretación de la sección 8ª de la "Ley Foraker," como en la de las referidas Órdenes Generales.—Fallamos : Que debemos declarar y declaramos con lugar el recurso de casación interpuesto, y en su consecuencia, casamos y anulamos la sentencia recurrida, la que con la que á continuación se dicta, comuníquese al Tribunal de Mayagüez, á los fines procedentes.—Así por esta nuestra sentencia, que se publicará en la *Gaceta Oficial*, lo pronunciams, mandamos y firmamos. ·

José S. Quiñones.—José C. Hernández.—José Mª Figueras. —Louis Sulzbacher.—J. H. MacLeary.

En la Ciudad de San Juan de Puerto Rico, á veinte de Febrero de mil novecientos dos, en el pleito seguido en el Tribunal del Distrito de Mayagüez por María del Carmen de Marimón de Pelegrí contra Francisco Pelegrí y Rotger, Abogado, vecino de Mayagüez, sobre divorcio, en cuyo pleito dictó sentencia el expresado Tribunal, que ha sido casada en esta fecha en virtud del recurso de casación por infracción de ley contra la misma interpuesto por la parte demandante.—Siendo Ponente el Juez Asociado Don Louis Sulzbacher.—Reproduciendo los fundamentos de hecho de la sentencia casada y los de hecho y derecho de la dè casación.—Considerando : Que por tales fundamentos, es procedente la demanda de María del Carmen de Marimón de Pelegrí, la que suplica en la misma se decrete el divorcio de ella y su esposo Francisco Pelegrí y Rotger, y se declaren disueltos los vínculos de matrimonio celebrado por ambos, y condenando al demandado Francisco Pelegrí y Rotger en las costas del pleito, con las declaraciones que sean pertinentes. —Vistas las disposiciones legales citadas en la sentencia de casación.—Fallamos : Que debemos declarar y declaramos

con lugar la demanda interpuesta por María del Carmen de Marimón de Pelegrí, en los propios términos en que ha sido formulada la súplica de la misma, con las costas á cargo del demandado Francisco Pelegrí Rotger, quien cesará en la administración que tenga de los bienes de su consorte, entregándolos á ésta; y los vínculos de matrimonio antes existentes entre las partes demandante y demandada quedan por esta sentencia para siempre disueltos.—Así por esta nuestra sentencia, irrevocablemente juzgando, lo pronunciamos, mandamos y firmamos.

José S. Quiñones.—José C. Hernández.—José Mª Figueras. —Louis Sulzbacher.—J. H. MacLeary.

Publicación.—Leídas y publicadas fueron las anteriores sentencias por el Sr. Juez Asociado del Tribunal Supremo Don Louis Sulzbacher, celebrando audiencia pública dicho Tribunal en el día de hoy, de que certifico como Secretario, en Puerto Rico, á veinte de Febrero de mil novecientos dos. —E. de J. López Gaztambide, *Secretario.*